IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------
In Re: WINSTAR COMMUNICATIONS  : Master File No. 01 Civ. 3014 (GBD)
SECURITIES LITIGATION          :
                               :
This Document Relates To:      :
All Actions                    :
--------------------------------------------------------

## LAW OFFICES OF MARC S. HENZEL'S MOTION FOR
## ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

The Law Offices of Marc S. Henzel hereby submits this Motion and the accompanying Memorandum of Law seeking payment of fees and reimbursement of expenses consistent with the firm's loadstar and expenses . In support of this motion, counsel states as follows:

1. The Law Offices of Marc S. Henzel, attorneys and professional staff spent a total of 26.8 in connection with the prosecution of this action, resulting in a total lodestar of $11,524.00. *See* Exhibit A to the Affidavit of Marc S. Henzel. Counsel also incurred expenses of $306.90 in connection with the prosecution of this action. *See* Affidavit of Marc S. Henzel, ¶7. Counsel respectfully requests that the Court award these amounts as reasonable compensation for time and services, or, in the alternative, direct Lead Counsel to apportion a fee award and expense reimbursement in those respective amounts.

2. This firm's role in this litigation consisted of pre-filing investigation and drafting, monitoring, and client communication. Most of the time and expenses took place prior to the selection and appointment of lead plaintiff and lead counsel. Thereafter, counsel's time and expenses were almost entirely dedicated to monitoring the litigation and keeping class member clients informed concerning the case's status.

3. This Law Firm provided a benefit to the Class in that counsel: a) investigated, drafted and filed an original complaint on behalf of plaintiff <u>Theodore S. Gutowicz v. Winstar Comm. et al.</u>, S.D.N.Y, 01-CV-3874, which was consolidated into the above referenced matter; b) Communicated with numerous class members regarding the class action process; and c) monitored this action and kept class member clients informed and abreast of the developments in this litigation, up to the point of settlement, including assuring the

clients received claim forms and assisting them in completing the forms.

4.     This firm specializes in class action litigation, including securities fraud class action, and has represented lead plaintiffs in numerous national class actions in courts across the nation.   A copy of the Law Offices of Marc S. Henzel's resume is filed herewith as Exhibit B to the Affidavit of Marc S. Henzel.

5.     At the time that most of this firm's time and expenses were allocated to this action, lead counsel had not yet been appointed.  Having undertaken to represent certain class members in connection with this action, and having filed a complaint on their behalf, counsel could not ignore the case's progress without violating the duty of care owed to the firm's clients.   To refuse even modest compensation in such circumstances would operate as an injustice.

Marc Henzel requests that this Honorable Court award fees and reimbursement of expenses to this firm.

Dated:  July 6, 2004

Marc S. Henzel, Esquire

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------
In Re: WINSTAR COMMUNICATIONS  : Master File No. 01 Civ. 3014 (GBD)
SECURITIES LITIGATION          :
                               :
This Document Relates To:      :
All Actions                    :
--------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF THE LAW OFFICES OF MARC S. HENZEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

The Law Offices of Marc S. Henzel, Counsel for Plaintiff <u>Theodore S. Gutowicz v. Winstar Comm. et al.</u>, 01-CV-3874, hereby submits this Memorandum of Law in support of its Motion for attorneys' fees and reimbursement of expenses.

<u>**INTRODUCTION**</u>

Following the initial revelations of securities fraud in this case, counsel filed a complaint for violations of the federal securities laws on May 7, 2001 on behalf of plaintiff <u>Theodore S. Gutowicz</u> and all others similarly situated.  This action was consolidated into the above-captioned action, and was litigated by the Court-appointed Lead Plaintiff and Lead Counsel.

Counsel undertook a limited by benefit-conferring role in this action.  This role initially involved investigation and analysis of legal claims.  Thereafter, not being appointed Lead Counsel,  counsel was required to monitor the progress of the litigation and communicated with Class Member clients to keep them apprised of case developments.  Lead counsel failed to inform counsel on the progress of the case.

<u>**ARGUMENT**</u>

I.  <u>**THE REQUESTED FEE IS FAIR AND REASONABLE**</u>

Courts recognized two standard methods for calculating attorneys' fee awards in class actions.  The first, or "percentage of the benefit" method, calculates attorneys' fees based on a percentage of the common benefit bestowed upon the class. The second, or "lodestar-plus-multiplier" method, uses class counsel's "lodestar" as a basis - determined by multiplying the hours counsel expended by their hourly rates - which the court may then

enhance by a multiplier, taking into account a variety of factors, including the quality of the representation, the complexity of the issues, the results obtained, and the contingent risk presented.  Under either measure, counsel's fee request is warranted and reasonable.  Based upon the facts of this case and for the reasons set forth below, counsel seeks recovery of attorneys' fees based on the percentage of the benefit analysis.

A.      **THE PERCENTAGE OF THE BENEFIT METHOD**

Under the common fund doctrine, either the lodestar method the "percentage of the benefit" approach is used to determine the amount of attorneys' fees. *Id. Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

The central requirement in any award based on a percentage of the benefit is that there be a benefit from which an award can be calculated.  Here, the benefits can be ascertained and a monetary value can be calculated.  The benefit to the class has a total value of $12,000.00.  Based upon counsel's role, limited as it may be, in the creation of an identifiable common fund, counsel respectfully submits the "percentage of the benefit" method is appropriate to determine counsel's attorneys' fees.

Where the percentage approach is used, percentages of 25% to 33% of the value of the recovery is typical.  *See* Federal Judicial Center Study by Thomas E. Willging, et al., *An Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rights* (April/May 1996), at 69 ("median rates range from 27% to 30%).

Here, counsel's requested attorneys' fees and expenses represents less than ½ of a percent of the total number, so far below the benchmark rates as to be almost beneath notice.

B.      **THE LODESTAR/MULTIPLIER METHOD**

The requested fee is also reasonable under the lodestar/multiplier method.  Under the lodestar/multiplier approach, the base of "lodestar" figure is computed by multiplying the number of hours reasonably spent in the litigation by the reasonable hourly rates for each attorney and paralegal.

Here, counsel has expended approximately 26.8 hours for a total lodestar of $11,524.00 and expenses in the amount of $306.90.  The mere fact that the Court-appointed

Lead Counsel chose not to assign work to counsel after appointment does not and should not mean that counsel's prior time and expense directed toward investigating and filing the initial claim should not be compensated.  Counsel's conduct was consistent with, in accordance, and mandated by  the Rules of Professional Responsibility 1.4(a) which states that "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information". Congress in 1995, passed amendments to the federal securities laws, and nowhere does the PSLRA state such work must be performed pro bono.

The total benefit conferred as a result of this litigation totals $12,000.00.  Counsel's requested fees and expenses represents less than ½ of a percent of the total benefit, and still less than ½ of a percent of the lead counsel's requested fee.  Clearly, under the percentage of the benefit method of fee determination, the instant request is more than fair - it borders on insignificant.

The instant fee and expenses request is also manifestly proper under the lodestar approach.  Indeed, since counsel is requesting nothing more than its simple lodestar - without any multiplier of any sort - and for the reimbursement of its out-of-pocket expenses, this fee request is more than fair, considering that Lead Counsel will enjoy a significant multiplier.

Furthermore, the express purposes of the PSLRA was to encourage investors other than the first filed plaintiff to seek to become lead plaintiff.  As the House Conference Committee noted:

> The Conference Committee was also troubled by plaintiffs' lawyers "race to the court house" to file a securities class action complaint.  This race has caused plaintiffs' attorneys to become fleet of foot and sleight of hand.  Most often speed has replaced diligence in draft complaints. . . The conference Committee believes that the selection of the lead plaintiff and lead counsel should rest on the considerations other than how quickly a plaintiff has filed a complaint.

H.R. CONF. REP. 104-369, 1995 U.S.C.C.A.N. 730, 732.

At least one well-reasoned case has rejected Lead Counsel's position that non-Lead Counsel are entitled to nothing:

> The question of whether this time [time spent in litigating notice to appoint lead plaintiff] should be included in the lodestar calculation has been briefed by counsel. One can, of course, argue that this time benefits only those who are selected as the lead plaintiffs and their counsel, since it gives them control over the litigation, subject to court supervision. However, because of the PSLRA, I find that the work done by all four firms was necessary. The statute must be complied with; if a contest arises, it must be litigated and resolved. Congress has made the determination that the lead plaintiff/counsel procedures are a benefit to the class in cases of this kind and I agree with the determination. It certainly insures that the class will be represented by the best available lead plaintiffs and lead counsel.
>
> * * *
>
> As noted above, all three Lead Counsel firms and four Non-Lead Counsel firms filed applications. Accordingly, I must address the question of how to treat services that were performed by Non-Lead Counsel in determining one reasonable fee to be awarded for representation of the class. It seems clear that Non-Lead Counsel's efforts may not be dismissed simply because they were not designated as Lead Counsel. <u>Gottlieb v. Barry</u>, 43 F.3d 474, 488-89 (10th Cir. 1994). If those efforts conferred some benefit on the class, then they are able to be included in the compensable services. <u>Ibid</u>.

Report of Special Master at 6, *In re Riboyme Pharmaceuticals, Inc. Sec. Litig.*, Case No. 99-MK-2235 (D. Colo. Sept. 25, 2003). *See also* <u>Gottlieb v. Barry</u>, 43 F.3d at 89 (non-lead counsel who "conferred a benefit on the class" should receive compensation).

The Conference Committee points out that the motion procedures are designed to inform institutional and other large investors of the pendency of an action affecting their interests and to encourage them to seek to be Lead Plaintiff. Adoption of a hard and fast rule that legal fees will not be awarded under any circumstances to persons who unsuccessfully seek to become lead counsel would contravene the express policy of the PSLRA, which seeks to encourage competition for Lead Plaintiff.

### B.  <u>Counsel is Entitled To Be Compensated For Work Performed</u>

Lead Counsel's duty to communicate and consult with the other plaintiffs' counsel, particularly regarding "appropriate settlement terms," is not optional. *See* <u>Boesky</u>, 948 F.2d at 1365. Each plaintiffs' counsel bears a professional obligation to their client(s) to maintain a timely record and understanding of

material activities and events in the litigation, and to be able to communicate periodically with the client to keep them informed with regard to these material activities and events.  Thus, it is to be expected, if not required, that other plaintiffs' counsel will be involved in all phases of the litigation, including the settlement process.  This expectation leaves little room for doubt that the other plaintiffs' counsel's activities in the litigation, including those activities conducted after the appointment of lead counsel, would and should be compensable.  A contrary finding here would force other plaintiffs' counsel, such as this firm, to accept lead counsel's cessation of communications and unwillingness to allow all plaintiffs' counsel to participate in the litigation, including the joint fee application, with such counsel then being unable to provide adequate legal representation to their clients, and with their services being effectively provided on a *pro bono* basis.  Further, other plaintiffs' counsel's obsequiousness in the face of lead counsel's abuse of power would be incompatible with the universally-accepted and rigorously enforced obligations mandating that attorneys must zealously represent their clients.

[W]hile there obviously was some duplication in the work of all counsel simultaneously pursuing many actions, we fail to see why the work of counsel later designated as class counsel should be fully compensated, while the work of counsel who were not later designated class counsel ... should be wholly uncompensated." Gottlieb v. Barry, 43 F.3d 474, 489 (10th Cir. 1994).

Moreover, this firm's efforts were intended to and did provide a benefit to the class, including a specified member of that class serving as a named plaintiff and possible class representative.  The mere fact that Lead Counsel wrongfully shut this firm and other plaintiffs' firms out of all proceedings after their appointment as lead counsel does not negate the efforts of other plaintiffs' counsel prior to and after the appointment of lead counsel[2].  This firm should not be penalized because it zealously represented the interests of its client, in spite of

---

[2] Nonetheless, some courts have made broad statements that fees incurred by other plaintiffs' counsel in class action cases are not compensable for work performed after the appointment of lead counsel, since, *inter alia*, there is no "reason for the class as a whole to compensate ... lawyers for **individual class members** ... for keeping their clients informed, or duplicating the efforts of Lead Counsel.  If **individual class members** wished to have the services of individual counsel, in addition to class counsel, they should bear the expense themselves." Independent Energy, 2003 WL 22990086 at *___, quoting In re Auction Houses Antitrust Litig., No. 00 Civ. 648 (LAK), 2001 WL 210697, at *4 (S.D.N.Y. Feb. 26, 2001) (emphasis added).  Further, in contrast to the concerns raised In re Auction Houses, Id., the fee requested by this firm will not prejudice the Class since it can be readily funded from

Lead Counsel's conduct.

This firm seeks compensation for the 26.8 hours, $11,524.00 of work that it expended in this litigation, in addition to $306.90 in unreimbursed out-of-pocket costs, which aggregate amount is a tiny fraction of the fee being requested by Lead Counsel. This modest request would not prejudice the Class since it can be readily funded from the fee awarded to Lead Counsel.

## II.   **CONCLUSION**

Based upon all of the foregoing, it is respectfully requested that the Motion be granted in its entirety.

Dated:

**LAW OFFICES OF MARC S. HENZEL**

By:    Marc S. Henzel
273 Montgomery Ave.
Suite 202
Bala Cynwyd, PA 19004
(610) 660-8000

---

the fee being requested by Lead Counsel. Additionally, in Gottlieb v. Barry, 43 F.3d at 489, the United States Court of Appeals for the Tenth Circuit reversed the holding of a district court that had confronted similar issues, as follows:

> The district court supported its refusal to award any fees to Non-Designated Counsel with the observation that law firms engage in "entrepreneurial" efforts when they file securities actions following the collapse of corporations whose stocks are widely traded, and if they "fail to find favor from the court" by not being selected as class counsel, they should expect no fee. We disagree with that broad statement.

See also Boesky, 948 F.2d at 1365 ("the failure to communicate with an consult with other plaintiffs' counsel is grounds for rejection of the settlement under Rule 23.").