**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE WINSTAR COMMUNICATIONS SECURITIES LITIGATION | Master File No. 01 Civ. 3014 (GBD) |
| This Document Relates To: | |
| All Actions | |
| JEFFERSON INSURANCE COMPANY OF NEW YORK, et al. | Case No. 01 Civ. 11522 (GBD) |
| Plaintiffs, | |
| v. | |
| WILLIAM J. ROUHANA, JR.; NATHAN KANTOR; RICHARD J. UHL; and GRANT THORNTON LLPC, | |
| Defendants. | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO GRANT THORNTON'S MOTION TO STRIKE PORTIONS OF THE DEVOR REPORT**

| | |
|---|---|
| Ralph M. Stone | Daniel C. Girard |
| James P. Bonner | Jonathan K. Levine |
| Patrick L. Rocco | Eric Z. Chang |
| STONE BONNER & ROCCO LLP | GIRARD GIBBS LLP |
| 260 Madison Avenue, 17th Floor | 601 California Street, Suite 1400 |
| New York, New York 10016 | San Francisco, California 94108 |
| *Lead Counsel for Class Plaintiffs* | *Counsel for the Jefferson Plaintiffs* |

**INTRODUCTION**

On July 8, 2008, Defendant Grant Thornton LLP ("GT") filed a letter brief with the Court in which it sought to strike certain portions of the report of Plaintiffs' accounting expert, Harris Devor. Plaintiffs filed responsive letter briefs on July 14 and July 21, 2008, in which they explained why GT's motion was both untimely and wholly lacking in merit. Plaintiffs submit this memorandum of law to supplement the arguments in their July 2008 letter briefs and to explain why GT's motion has been mooted by events in the litigation and categorically refuted by the Second Circuit's July 19, 2012 opinion in this matter. For the reasons set forth below and in Plaintiffs' earlier letter briefs, GT's motion to strike should be denied in its entirety.

**ARGUMENT**

The premise behind GT's motion to strike was purportedly to avoid the burden of having to respond to opinions in Mr. Devor's report that GT considered to be irrelevant. *See* GT's July 8, 2008 letter to the Court ("7/8/08 Ltr.") at 3, n. 1. That argument was untimely when made because GT had already submitted the report of its accounting expert, Laureen Ryan, on July 3, 2008, **before** GT filed its motion to strike. Thus, to the extent that GT's expert failed to respond to portions of Mr. Devor's report without GT first having obtained relief from the Court obviating the need for such a response, GT did so at its peril and the deadline for expert discovery has now long since passed. To the extent that GT's accounting expert did in fact respond in July 2008, then GT's burden argument on this ground is moot.

GT next claimed that it would be unduly burdened by having to depose Mr. Devor regarding the opinions that GT seeks to strike and to expand its motion for summary judgment to address those opinions. *See* 7/8/08 Ltr. at 3. These claims also have been rendered moot by subsequent events in the litigation. GT deposed Mr. Devor for a full day on August 12, 2008,

1

covering all of the ground to which its "burden" argument was addressed. GT filed its summary judgment motion on September 29, 2008, and covered the same ground again. Thus, this supposed justification for GT's motion to strike is now moot since GT has in fact responded multiple times in multiple ways to the opinions in Mr. Devor's report that it deems irrelevant.

Even if the Court were to consider the arguments that underlie GT's motion to strike, the motion must be denied as meritless. GT's motion to strike began as an effort to exclude Mr. Devor's opinions on matters that GT claimed were not at issue in this case, including "Winstar's <u>unaudited 1999 quarterly</u> financial statements and the work Grant Thornton performed relative to those statements . . . . and Winstar's <u>unaudited 2000 quarterly</u> financial statements and the work Grant Thornton performed relative to those statements." 7/8/08 Ltr. at 2 (emphasis in original).

When confronted with the obvious flaws in the over breadth of these claims, GT later abandoned them, arguing only to exclude those portions of Mr. Devor's report that opine on whether Winstar made misstatements in its unaudited 1999 and 2000 quarterly financial statements. *See* GT's July 18, 2008 letter to the Court at 3-4 ("7/18/08 Ltr."). Curiously, GT characterized those misstated quarterly financial statements as irrelevant despite conceding the relevancy of its own conduct in performing quarterly reviews for those financial statements. GT's position makes no sense, as the violations of Generally Accepted Accounting Principles ("GAAP") that render each of Winstar's 1999 quarterly financial statements materially false also demonstrate GT's knowledge that Winstar's year-end financial statements, which recorded as legitimate the very same bogus, end-of-quarter transactions reflected in the quarterly financial statements, were materially false. Thus, Mr. Devor's opinion explaining how each of those 1999 quarterly financial statements was false, and in violation of GAAP, is plainly relevant. This is especially so in light of the undisputed evidence that GT performed "audit-level" procedures

during its 1999 quarterly work that was used in reaching its conclusions regarding Winstar's audited 1999 year-end financial statements. *See* Plaintiffs' July 14, 2009 letter to the Court at 4-5 and July 21, 2008 letter to the Court at 3-4.

Recent developments conclusively establish the fallacious nature of GT's position. The Second Circuit's July 19, 2012 opinion reversing this Court's summary judgment order in favor of GT dispels any doubt regarding the relevancy of Winstar's 1999 quarterly financial statements and the work performed by GT concerning those statements. After espousing the uncontroversial notion that the quarterly reports themselves cannot form the basis of GT's liability under Section 10(b), the Court of Appeals noted: "**The end-of-quarter transactions are nevertheless relevant to the issue of GT's scienter because they should have raised red flags for GT as to whether they were genuine and could be reported on Winstar's end-of-year filing for fiscal year 1999.**" *Gould v. Winstar Communications Inc.*, 692 F. 3d 148, 160, n.11 (2d Cir. 2012) (emphasis added).

Thus, the Court of Appeals has definitively disposed of GT's effort to characterize Mr. Devor's opinion that each of Winstar's 1999 quarterly financial statements was materially false and misleading because those financial statements recorded revenue related to the fraudulent, end-of-quarter transactions that the Court of Appeals discussed in detail. *See id.* at 152-54. The transactions themselves are relevant because they were all reviewed by GT and they were all shams that allowed Winstar to book revenue improperly in violation of GAAP. Thus, *a fortiori*, Mr. Devor's opinions regarding the falsity of Winstar's 1999 quarterly financial statements are relevant because they are based on those very same bogus transactions. Those opinions also provide the necessary context for GT's conduct and knowledge concerning Winstar's 1999 year-

3

end financial statements, which Mr. Devor opines were also materially false because they recognized revenue at year end on the very same bogus end-of-quarter transactions.

While the Court of Appeals did not need to reach the issue of the relevancy of Winstar's materially false 2000 quarterly reports, GT's arguments to exclude Mr. Devor's opinions regarding the falsity of those reports fare no better than GT's claims regarding the 1999 statements. GT now concedes that its conduct in reviewing Winstar's 2000 quarterly financial statements is relevant to the issue of scienter, but it nevertheless seeks to prevent Mr. Devor from offering his opinion that each of those 2000 quarterly financial statements was materially false because it recognized revenue related to bogus end-of-quarter transactions in clear violation of GAAP.

Again, GT's argument makes no sense. GT's conduct regarding Winstar's 2000 quarterly reports is relevant precisely because it demonstrates GT's knowledge that, during 2000, Winstar continued to book revenue related to the same type of sham end-of-quarter transactions that the company continually booked in 1999 in egregious violation of GAAP. Although a GT audit partner deemed the 2000 transactions "garbage," GT continued to sit idly by despite its obligation under GAAS to re-examine its 1999 audit opinion in light of these later occurring events. Accordingly, Mr. Devor's opinion that the 2000 quarterly financial statements were false because they booked revenue related to the very transactions that GT deemed "garbage" is plainly relevant because it demonstrates: (a) the degree of GT's knowledge of Winstar's flagrant GAAP violations; and (b) GT's willingness to remain as Winstar's auditor and to continue to stand behind its fraudulent 1999 audit opinion despite its knowledge of Winstar's intentional manipulation of its financial results. *See also* Plaintiffs' July 14, 2009 letter at 5-8 and July 21, 2008 letter at 2-3.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Plaintiffs' July 14 and 21, 2008 letter briefs, GT's motion to strike portions of the Devor report should be denied in its entirety.

| | |
|---|---|
| Dated: November 2, 2012 | Respectfully Submitted, |
| STONE BONNER & ROCCO LLP | GIRARD GIBBS LLP |
| By:   */s/ Patrick L. Rocco* | By:   */s/ Jonathan K. Levine* |
| Ralph M. Stone<br>James P. Bonner<br>Patrick L. Rocco<br>260 Madison Avenue, 17th Floor<br>New York, New York 10016<br>Telephone: (212) 239-4340<br>Facsimile:  (212) 239-4310 | Daniel C. Girard<br>Jonathan K. Levine<br>Eric Z. Chang<br>601 California Street, Suite 1400<br>San Francisco, California 94108<br>Telephone: (415) 981-4800<br>Facsimile:  (415) 981-4846 |
| *Lead Counsel for Class Plaintiffs* | *Counsel for the Jefferson Plaintiffs* |

## CERTIFICATE OF SERVICE

I, Patrick L. Rocco, hereby certify that on November 2, 2012, I caused the following document(s) to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service:

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO GRANT THORNTON'S MOTION TO STRIKE PORTIONS OF THE DEVOR REPORT

Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of November, 2012 at Summit, New Jersey.

                                                        */s/ Patrick L. Rocco*
                                                        Patrick L. Rocco