UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re WINSTAR COMMUNICATIONS SECURITIES LITIGATION<br><br>This Document Relates to: All Actions<br><br>―――――――――――――――――――<br><br>JEFFERSON INSURANCE COMPANY OF NEW YORK et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>WILLIAM J. ROUHANA, JR.; NATHAN KANTOR; RICHARD J. UHL; and GRANT THORNTON LLP,<br><br>      Defendants. | Master File. No. 01 Civ. 3014 (GBD)<br><br><br>**SUPPLEMENTAL BRIEF OF GRANT THORNTON IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF THE DEVOR REPORT**<br><br><br>Case No. 01 Civ. 11522 (GBD) |

Robb L. Voyles (*admitted pro hac vice*)
Thomas E. O'Brien (*admitted pro hac vice*)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6503
robb.voyles@bakerbotts.com
tom.obrien@bakerbotts.com

Michael L. Calhoon (*admitted pro hac vice*)
Alexandra M. Walsh (*admitted pro hac vice*)
**BAKER BOTTS L.L.P.**
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7700
michael.calhoon@bakerbotts.com
alex.walsh@bakerbotts.com

James L. Bernard (JB-4273)
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, New York 10038
(212) 806-5400
jbernard@stroock.com



*Attorneys for Defendant Grant Thornton LLP*

## TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................... ii

Argument ...................................................................................................................................2

    I.    GT's request for relief is not moot, but could be deferred. ................................................2

    II.    The Second Circuit's opinion provides no basis for admitting Mr. Devor's opinions on Winstar's 1999 quarterly financial statements or GT's review of those financial statements. ...3

    III.    Plaintiffs' arguments regarding Mr. Devor's opinions on Winstar's 2000 quarterly financial statements and GT's review of those financial statements remain unconvincing. ........7

Conclusion ...............................................................................................................................10

- ii -

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Gould v. Winstar Commc'ns*,
 692 F.3d 148 (2d Cir. 2012) ....................................................................................... 1, 3, 4

*In re Winstar Commc'ns Sec. Litig.*,
 No. 01 Civ. 3014 (GBD), 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) ............................. 2, 9

*Shields v. Citytrust Bancorp, Inc.*,
 25 F.3d 1124 (2d Cir. 1994) ................................................................................................ 8

**OTHER AUTHORITIES**

AU Section 561, "Subsequent Discovery of Facts Existing at the Date of the Auditor's
 Report" ................................................................................................................................. 9

Grant Thornton ("GT") respectfully files this Supplemental Memorandum in support of its July 2008 letters seeking to strike certain portions of the Expert Report of Harris Devor, including portions that identify "alleged misstatements in Winstar's 1999 and 2000 quarterly financial statements, and alleged deficiencies by [GT] with respect to those financial statements." GT's 7/8/2008 Ltr. at 2; *see also id.* at Exhibit A (listing particular sections of the Devor Report that should be struck); GT's 7/18/2008 Ltr. at 2.[1]  On November 2, 2012, Plaintiffs filed a Supplemental Memorandum opposing GT's request. That Memorandum makes three primary arguments. None has merit.

First, GT's request for relief is not moot, though it could be deferred, as explained in further detail below. Second, the Second Circuit's recent decision provides no basis for allowing the opinions GT challenges. To the contrary, in its opinion the Second Circuit confirmed that the "only . . . basis for [GT's] liability under Section 10(b)" is its "February 10, 2000 *audit* opinion letter" on Winstar's 1999 *year-end* financials. *Gould v. Winstar Commc'ns*, 692 F.3d 148, 160 n.11 (2d Cir. 2012) (emphases added). That confirmation removes any doubt that Mr. Devor's opinions that Winstar's *quarterly financial statements* contained misstatements, and that GT's review of those financial statements was somehow deficient, have no place in this case.

Finally, Plaintiffs' efforts to make this a case about Winstar's accounting and GT's activities in *2000* should be rejected. The question in this case is whether GT's *1999* audit report was knowingly or recklessly false. The Court has stated that evidence of what GT "thought and

---

[1] In this Memorandum, GT uses the following short-form conventions:  the Letter from James L. Bernard to the Court, July 8, 2008, shall be referred to as "GT's 7/8/2008 Ltr."; the Letter from Thomas G. Ciarlone, Jr. to the Court, July 14, 2008, as "Pls.' 7/14/2008 Ltr."; the Letter from James L. Bernard to the Court, July 18, 2008, as "GT's 7/18/2008 Ltr."; the Letter from Thomas G. Ciarlone, Jr. to the Court, July 21, 2008, as "Pls.' 7/21/2008 Ltr."; Plaintiffs' Supplemental Memorandum of Law in Opposition to Grant Thornton's Motion to Strike Portions of the Devor Report as "Pls.' Supp. Mem."; and the Expert Report of Harris Devor as the "Devor Report." Citations to "Ex." refer to the corresponding Exhibits attached to the Declaration of Alexandra M. Walsh in support of this memorandum.

said" in 2000 could bear on GT's scienter in 1999 (depending on what that evidence is). But Mr. Devor's 2000 opinions are not evidence of what GT "thought and said," and they provide no probative value concerning GT's scienter when it issued its 1999 audit opinion. Allowing Mr. Devor to offer these opinions at trial would only confuse and mislead the jury about the complicated issues they must decide in this case.

## ARGUMENT

**I.   GT's request for relief is not moot, but could be deferred.**

Plaintiffs contend that GT's request for relief should be denied because it has "been mooted by events in th[is] litigation." Pls.' Supp. Mem. at 1. Plaintiffs are correct that one of the reasons GT filed its motion when it did—rather than waiting until closer to trial—was because GT hoped to streamline expert discovery and the summary judgment process. *See* GT's July 8 letter at 3. Because those phases of the case are now complete, it is not urgent that the Court rule on GT's motion to strike immediately. If the Court prefers, this issue could be deferred until the motion *in limine* stage.

That said, GT's request for relief on this issue is not "moot." The principal reason GT sought to strike portions of Mr. Devor's Report was because, once the Court ruled that the only actionable misrepresentation or omission in this case was GT's 1999 audit opinion, *see* Pls.' 7/14/2008 Ltr. at 3 (citing *In re Winstar Commc'ns Sec. Litig.*, No. 01 Civ. 3014 (GBD), 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) (the "Order")), it became clear that Mr. Devor's opinions regarding alleged misstatements in Winstar's 1999 and 2000 quarterly financial statements, and alleged deficiencies in GT's review procedures with respect to those financial statements, are irrelevant. *See* Order, 2006 WL 473885, at *10 (rejecting the possibility that GT could be held "legally responsible for misstatements or omissions allegedly contained in Winstar's unaudited quarterly reports"). Those opinions are still part of the Devor Report and, based on their

Supplemental Memorandum, Plaintiffs still intend to offer them at trial. Accordingly, the controversy between the parties on this issue is still very real.

Because the relief GT seeks now relates to the proper scope of Mr. Devor's testimony, it would be appropriate for the Court to defer this issue to the motion *in limine* stage. There is no question, however, that the Court will need to rule on the admissibility of the challenged opinions prior to trial, and that the ruling should be in GT's favor.

II.   **The Second Circuit's decision provides no basis for admitting Mr. Devor's opinions on Winstar's 1999 quarterly financial statements or GT's review of those financial statements.**

According to Plaintiffs, the Second Circuit's recent decision confirms the relevance of Mr. Devor's opinions that Winstar's 1999 quarterly financial statements contained misstatements, and that GT's review of those financial statements was deficient. Pls.' Supp. Mem. at 3–4 (citing *Gould*, 692 F.3d at 160 n.11). In fact, the opposite is true.

In its opinion, the Second Circuit confirmed what this Court has already made clear: "Winstar's quarterly financial reports for 1999, no matter how involved GT was in their formulation, cannot serve as independent grounds for Section 10(b) liability for GT," and the "*only* . . . basis for [GT's] liability under Section 10(b)" is its "February 10, 2000 audit opinion letter regarding Winstar's Form 10-K for fiscal year 1999." *Gould,* 692 F.3d at 160 n. 11 (emphasis added). It follows from this limitation on liability that Mr. Devor's opinions on Winstar's *quarterly* financial statements—results that GT did not audit, on which GT did not opine, and for which GT cannot be held liable—are irrelevant. Mr. Devor's conclusion that GT's *review* of the 1999 quarterly financial statements was deficient lacks probative value for the same reason: The question in this case is whether GT can be liable under Section 10(b) for its opinion, based on its *audit* procedures, that Winstar's 1999 year-end financials statements complied with Generally Accepted Accounting Principles ("GAAP").

As Plaintiffs point out, the Second Circuit did observe that Winstar's 1999 "end-of-quarter transactions" may be relevant to "the issue of GT's scienter because they should have raised red flags for GT as to whether they were genuine and could be reported on Winstar's end-of-year filing for fiscal year 1999." *Id.* But the relevance of those *transactions*, and "red flags" that purportedly should have called into question the transactions' legitimacy at *year-end*, provide no basis for admitting Mr. Devor's opinion on whether Winstar's earlier *quarterly* financial statements were misstated or whether GT's review of those financial statements—for which GT can have no liability—complied with professional standards. To the contrary, in making its observation, the Second Circuit was clear that the fact issues for the jury are whether the transactions "could be reported on Winstar's *end-of-year filing* for fiscal year 1999" and whether GT had the requisite scienter when it opined on that end-of-year filing. *Id.* (emphasis added). Plaintiffs should not be allowed to confuse the jury's consideration of those questions, and protract what will already be a lengthy trial, by introducing Mr. Devor's irrelevant opinions on financial statements that have no bearing on GT's liability.[2]

Plaintiffs also contend that Mr. Devor's conclusion that Winstar improperly recorded certain transactions in its quarterly financial statements is relevant because it "demonstrates GT's knowledge that Winstar's year-end financial statements," which recorded the same transactions, were also "materially false." *See* Pls.' Supp. Mem. at 2. That theory of relevance is fundamentally flawed. The falsity of a statement at time A does not establish the falsity, much less the *knowing* falsity, of a similar statement at time B. Even if Winstar did improperly record a particular transaction for a particular quarter in 1999, it does not follow that Winstar

---

[2] Contrary to Plaintiffs' assertion, the fact that "[t]he transactions themselves are relevant," does not mean ("*a fortiori*" or otherwise) that every financial statement in which those transactions appear is relevant too. *See* Pls.' Supp. Mem. at 3.

improperly recorded the transaction at year-end, when the circumstances surrounding the proper accounting had changed.  This is a point even Mr. Devor seems to acknowledge.  *See, e.g.,* Devor Report p. 30 (noting that "[a]lthough the transactions with Williams were improper as to timing in the quarters, delivery may have occurred at some point prior to year end").  The fact that the circumstances of a transaction may progress over time also means that alleged misstatements in Winstar's quarterly financial statements cannot "demonstrate" GT's knowledge that a transaction was improperly recorded months later, under different circumstances, in Winstar's year-end financials.  That is true even if GT was aware of any misstatements in the quarterly financials, which it was not.

GT could explain to the jury why the possibility that a transaction was misstated in Winstar's quarterly financial statements does not mean that it was misstated in the year-end financials, or that GT was aware of that impropriety.  But there is no reason to put GT to that burden, or to waste the jury's time with that explanation and evidence, when the fact of any alleged misstatements in the quarterly financial statements is irrelevant in the first place.

For some transactions, Mr. Devor's opinion is that no change in circumstances could justify recording the transaction—because, for example, the transaction allegedly lacked economic substance.  In those cases, Mr. Devor can, and no doubt will, explain why, in his opinion, the transaction caused a misstatement in the year-end financial statements.  Allowing him to opine that the transaction was *also* misstated in the quarterly financial statements would add nothing—except to mislead the jury into believing that GT can be held liable in connection with Winstar's quarterly financial statements, which it cannot.

Mr. Devor's opinion that GT's review of Winstar's quarterly financial statements violated professional standards should be excluded for similar reasons.[3] Contrary to Plaintiffs' suggestion, GT's review work and its audit were two separate processes that considered different financial statements at a different level of detail and for different purposes. Only the audit opinion is at issue. Accordingly, while Mr. Devor's opinion that GT's audit did not comply with GAAS is undoubtedly relevant, his opinion that GT's review work failed to meet applicable standards is not. It is true that GT gained knowledge about the challenged transactions during its review process. But that fact provides no basis for allowing Mr. Devor to opine that GT's reviews of Winstar's quarterly financial statements were deficient. Even if Mr. Devor were correct that GT's reviews failed to meet applicable professional standards, that opinion sheds little light on whether GT violated Section 10(b) when it stated that its *audit* of the year-end financials was performed in accordance with GAAS. Plaintiffs should not be allowed to prejudice the jury's consideration of that critical audit question by offering pointless opinions about alleged deficiencies in GT's quarterly review work.[4]

---

[3] Contrary to what Plaintiffs assert, *see, e.g.*, Pls.' Supp. Mem. at 2, GT has never conceded the relevance of Mr. Devor's opinions concerning the adequacy of its review of Winstar's quarterly financial statements. Quite the opposite: In each of its prior submissions on this motion, GT has identified as objectionable portions of the Devor Report that reflect his opinions about those reviews. See GT's' 7/8/2008 Ltr. at 1–2 & Exhibit A; GT's' 7/18/2008 Ltr. at 1 (continuing to seek to strike the opinions listed in Exhibit A). Likewise, while the instant motion does not seek to preclude Plaintiffs from offering evidence of GT's conduct that is relevant to determining whether its *audit* complied with applicable professional standards, GT's 7/18/2008 Ltr. at 3, Plaintiffs err in their categorical assertion that GT has conceded that its conduct in reviewing Winstar's *quarterly* financial statements is relevant. *See, e.g.*, Pls.' Supp. Mem. at 2, 4.

[4] Plaintiffs' defense of Mr. Devor's opinions on this topic rely on a mischaracterization of the testimony of GT audit partners Gary Goldman and Patricia Cummings. Contrary to what Plaintiffs assert, Mr. Goldman did not "agree[] that he was comfortable relying on [GT's quarterly review] procedures as fulfilling [its] audit responsibilities." Pls.' 7/14/2008 Ltr. at 4. Rather, he testified that he was comfortable relying on those procedures *only* "[a]fter considering whatever else was done . . . during the audit." Ex. 1, Deposition of Gary Goldman (June 28, 2007) at 168. Throughout his deposition, Mr. Goldman made clear that "[GT's] responsibilities under a review and [its] responsibilities under an audit *are different*." *Id.* at 94 (emphasis added). He explained that GT "looked at each large transaction during the quarters on a case-by-case basis," but "it was not an audit. It was a review, so . . . the standards in testing that [GT] applied is what [it] deemed appropriate in those circumstances understanding that it's a review and not an audit." *Id.* at 167–68. Ms. Cummings' testimony was similar: She testified that GT "gained

Finally, and for avoidance of doubt, GT does not concede that any of Winstar's 1999 financial statements contained misstatements, or that GT's review of any of Winstar's quarterly financial statements was in any way deficient. If Mr. Devor is permitted to offer his opinions on those topics, GT will have no choice but to rebut those irrelevant (and erroneous) conclusions, creating unnecessary trials within a trial and further protracting and complicating what will already be a long and complicated proceeding.

**III.    Plaintiffs' arguments regarding Mr. Devor's opinions on Winstar's 2000 quarterly financial statements and on GT's review of those financial statements remain unconvincing.**

Plaintiffs contend that Mr. Devor's opinions regarding Winstar's 2000 quarterly financial statements, and GT's review of those 2000 financial statements, should be admitted because they "demonstrate GT's knowledge" that Winstar's 2000 financial statements contained misstatements similar to those that allegedly existed in its 1999 financial statements. Pls.' Supp. Mem. at 4. Plaintiffs also assert that Mr. Devor's opinions about Winstar's 2000 GAAP violations confirm that GT was obligated to revisit its 1999 audit opinion. Pls.' Supp. Mem. at 4; *see also* Pls.' 7/21/2008 Ltr. at 3. Plaintiffs are wrong on both counts.

GT acknowledges the Court's observation that what GT "thought and said" in 2000 could be relevant to GT's scienter in 1999—"depend[ing] on what the evidence is" and "what the conversation is about." Ex. 3, Hr'g Tr. (Oct. 26, 2006) at 17, 20 ("Hr'g Tr."); *see also* Ex. 3, Hr'g Tr. at 23 (ruling that Plaintiffs were entitled to discovery of GT's "workpapers that relate to the same transactions or issues that [GT was] dealing with here in 1999"). But Mr. Devor's opinion that Winstar's 2000 financial statements contained misstatements is not evidence of what

---

knowledge" through its quarterly reviews, but "did not do audit procedures, per se, at the quarters" and "did not audit the quarterly data." Ex. 2, Deposition of Patricia Cummings (July 12, 2007) at 111–12. Cummings said she "wouldn't suggest," as Plaintiffs do now, that GT was "necessarily placing reliance on anything that [it] did at the quarter" in its performance of the audit. *Id.* at 161–62.

GT "thought and said" in 2000. It is evidence of what *Mr. Devor* opined about a set of financial statements, and instances of allegedly improper accounting, that are not at issue.[5]

Even if Mr. Devor's opinions did tend to show that GT was aware of Winstar's alleged 2000 GAAP violations, such awareness has no bearing on GT's scienter when it issued its *1999* audit opinion—unless, perhaps, Plaintiffs' evidence also tends to show that GT was aware of (but disregarded) alleged accounting violations in 1999. *See* Ex. 3, Hr'g Tr. at 16–17.[6] Mr. Devor's opinions about Winstar's 2000 accounting show no such thing. Nor, for that matter, does the other evidence Plaintiffs cite regarding GT's concerns about Winstar's 2000 accounting. *See, e.g.*, Pls.' 7/14/2008 Ltr. at 7–8. None of that evidence shows, for example, that the GT auditors believed that the issues they noted in 2000 dated back to 1999 or implicated Winstar's accounting in that prior year.[7]

Mr. Devor's opinions about the deficiencies in GT's review work in 2000 are also misplaced. The possibility that those reviews did not meet applicable professional standards, even if true, does not demonstrate that GT knew, or recklessly failed to discover, that the accounting in Winstar's earlier 1999 year-end financial statements was wrong. Nor can GT's alleged failure to comply with professional standards in 2000 show that GT's 1999 audit work

---

[5] Notably, the Court's remarks at the October 26, 2006 hearing addressed only whether Plaintiffs could obtain discovery of GT's 2000 and 2001 workpapers (*i.e.,* evidence of what GT "thought and said" in those years). The Court did not address, much less resolve, whether or to what extent those workpapers or any other evidence concerning post-1999 events would be admissible at trial. *See* Ex. 3, Hr'g Tr. at 16–17.

[6] That limitation was made clear in the Court's comments at the October 2006 hearing. *See, e.g.*, Ex. 3, Hr'g Tr. at 16 ("If I said in 2000, we would never do anything like this, and I did it in 1999 because I was involved in fraudulent activity, you don't think it's relevant because it's a subsequent statement or subsequent transaction . . . [?]"). By contrast, where a defendant's subsequent statements or knowledge are not clearly probative of the defendant's *prior* state of mind, that evidence amounts to impermissible proof of "fraud by hindsight." *See, e.g.*, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (allegations that defendant's statements predicting a prosperous future were contradicted by statements a few months later acknowledging losses were insufficient to allege scienter).

[7] Again, Plaintiffs are wrong in asserting that GT has conceded, or that the Court has resolved, the admissibility of post-1999 evidence, including the particular evidence they cite in this briefing. *See* Pls.' 7/21/2008 Ltr. at 3.

violated GAAS. Even if this subsequent evidence did have some theoretical probative value, it still would not belong in this case. The Court has made clear that GT cannot be held liable for any deficiencies in its review of Winstar's 2000 quarterly financial statements and, as Plaintiffs acknowledge, the only actionable misrepresentation that they have alleged is GT's audit opinion concerning Winstar's 1999 year-end financial statements. *See* Pls.' 7/14/2008 Ltr. at 3 (citing Order, 2006 WL 473885, at *10). Plaintiffs should not be permitted to circumvent that ruling by offering 2000 evidence based on a theory of relevance that is attenuated, at best.

Plaintiffs also claim that Mr. Devor's opinions are relevant because, "if Winstar's quarterly financial results from 2000 violated GAAP," that would have obligated GT to reexamine its 1999 audit opinion. Pls.' 7/21/2008 Ltr. at 3; Pls.' Supp. Mem. at 4. Plaintiffs appear to believe that GT's failure to act on that supposed obligation somehow retroactively reveals its state of mind back when it issued its 1999 audit opinion. Pls.' 7/14/2008 Ltr. at 8; Ex. 3, Hr'g Tr. at 11. Even if Plaintiffs were correct that GT was obligated to re-examine its 1999 opinion based on accounting violations that allegedly occurred in 2000, GT's failure to conduct that re-examination is hardly relevant to whether GT acted knowingly or recklessly when it earlier opined on Winstar's 1999 financial statements and was necessarily unaware of those as-yet uncommitted violations.

In any event, Plaintiffs misinterpret the obligation GAAS imposes. Under AU Section 561, "Subsequent Discovery of Facts Existing at the Date of the Auditor's Report," an auditor should re-examine a prior audit opinion if (1) he becomes "aware of information which relates to financial statements previously reported on by him"; (2) he determines that the information is reliable; and (3) he finds that the information "*existed at the date of [his prior] report.*" (emphasis added). GT's 7/18/2008 Ltr., Exhibit A, at AU 561.04. By contrast, an auditor has no

obligation to re-examine a prior report based on information about "developments or events occurring *after the date of [his prior] report.*" *Id.* at AU 561.03. Winstar's alleged violations of GAAP in 2000 are, undeniably, "events occurring *after* the date of [GT's 1999 audit] report." Accordingly, even if such violations did occur and even if GT was aware of them, that awareness would not trigger any obligation to re-examine under AU 561.[8]

As noted above, the question in this case is *not* whether Winstar made misstatements in its 2000 quarterly financial statements, or whether GT expressed concerns about those potential 2000 misstatements, or whether GT complied with relevant standards in its 2000 review work. Rather, the questions are whether GT issued a false audit opinion on Winstar's year-end 1999 financial statements, and whether it did so with scienter. Even if Mr. Devor's opinions on 2000 events had any probative value concerning those 1999 questions, that value is far outweighed by the harms that would result: by the time that would be wasted subjecting the jury to a series of mini-trials on beside-the-point issues; by the unnecessary complexity that these issues would add to an already complicated case; and by the serious risk that the jury would conclude that GT can, or should, be held liable based on events that provide no basis for liability.

## CONCLUSION

GT respectfully submits that the Court could defer a ruling on the proper scope of Mr. Devor's testimony until the motion *in limine* stage. Should the Court choose to resolve the issue now, GT respectfully requests a ruling that Mr. Devor may not testify to alleged misstatements in Winstar's 1999 and 2000 quarterly financial statements, or to any alleged deficiencies in GT's review work with respect to those financial statements.

---

[8] While GT chose not to address Mr. Devor's opinion on AU 561 in its motion to strike, 7/18/2008 Ltr. at 3**,** all of GT's submissions have made clear that it was not waiving its right to move *in limine* concerning any aspect of Mr. Devor's report not addressed in the Motion, including his opinion on AU 561. *See, e.g.,* GT's 7/8/2008 Ltr. at 2.

Dated: November 16, 2012

/s/ Robb. L. Voyles
Robb L. Voyles (*admitted pro hac vice*)
Thomas E. O'Brien (*admitted pro hac vice*)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6503
robb.voyles@bakerbotts.com
tom.obrien@bakerbotts.com

Michael L. Calhoon (*admitted pro hac vice*)
Alexandra M. Walsh (*admitted pro hac vice*)
**BAKER BOTTS L.L.P.**
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7700
michael.calhoon@bakerbotts.com
alex.walsh@bakerbotts.com

James L. Bernard (JB-4273)
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, New York 10038
(212) 806-5400
jbernard@stroock.com

*Attorneys for Defendant Grant Thornton LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2012, I served the foregoing on all parties by filing this document with the Clerk of Court using the CM/ECF system, pursuant to Local Civil Rule 5.2.

/s/ Robb. L. Voyles
Robb L. Voyles (*admitted pro hac vice*)
Thomas E. O'Brien (*admitted pro hac vice*)
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6503
robb.voyles@bakerbotts.com
tom.obrien@bakerbotts.com

Michael L. Calhoon (*admitted pro hac vice*)
Alexandra M. Walsh (*admitted pro hac vice*)
**BAKER BOTTS L.L.P.**
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7700
michael.calhoon@bakerbotts.com
alex.walsh@bakerbotts.com

James L. Bernard (JB-4273)
**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane
New York, New York 10038
(212) 806-5400
jbernard@stroock.com

*Attorneys for Defendant Grant Thornton LLP*
