UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE WINSTAR COMMUNICATIONS SECURITIES LITIGATION  _____  JEFFERSON INSURANCE COMPANY OF NEW YORK, et al.,  Plaintiffs,  v.  WILLIAM J. ROUHANA, JR.; NATHAN KANTOR; RICHARD J. UHL; and GRANT THORNTON LLP,  Defendants. | Master File No. 01 Civ. 3014 (GBD)   Case No. 01 Civ. 11522 (GBD) |

## DECLARATION OF GREGG A. JARRELL

I, Gregg A. Jarrell, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I have been retained by Plaintiffs in this litigation to opine on issues relating to materiality, causation, per share damages and aggregate damages suffered by investors who purchased the common stock or notes of Winstar Communications, Inc. ("Winstar") between March 10, 2000 and April 2, 2001 (the "Class Period"). In this action, I previously have submitted an Expert Report dated May 22, 2008 (the "Jarrell Report"), which set forth my qualifications, compensation and initial opinions. I have also submitted a Rebuttal Report dated July 30, 2008 (the "Jarrell Rebuttal Report") and was deposed on August 14, 2008 (the "Jarrell Deposition"). The opinions set forth in my two Reports and at my deposition were subject to an unsuccessful *Daubert* challenge by Defendant Grant Thornton ("Grant Thornton").

1

2. I make this Declaration to address the new analyses performed and new theories advanced by Lucy P. Allen in her Expert Report dated December 14, 2012 (the "Allen Report"). Ms. Allen was hired by Grant Thornton to replace Dr. Frederick Dunbar, who passed away in February 2012. Dr. Dunbar had previously submitted an Expert Report dated July 3, 2008 (the "Dunbar Report") and was deposed in this matter on August 21, 2008 (the "Dunbar Deposition").

3. This Declaration is based on my initial review of the Allen Report and the work I previously performed in the litigation. My substantive analysis of the Allen Report has just commenced and I have not had an opportunity to review the voluminous documents and new data compilations used by Ms. Allen to prepare her Report. While my substantive analysis has only just commenced, it is clear from my initial review of the Allen Report that I, and employees at Forensic Economics who I have worked with on this matter, will have to spend substantial time to respond to the opinions in the Allen Report, including the new analyses performed and new theories advanced by Ms. Allen that were not in the Dunbar Report.

4. For example, in the Allen Report, Ms. Allen puts forth a new theory not previously advanced by Dr. Dunbar that the event study outlined in the Jarrell Report does not have proper controls, including a failure to adjust for changes in Winstar's volatility and the lack of inclusion of a peer index of four companies used by Grant Thornton's other expert, William Taylor in his Expert Report dated July 3, 2008 (the "Taylor Report"). The four companies are Nextlink, Metricom, Teligent, and Advanced Radio ("Defendant's Peer Index"). To purportedly account for the changes in Winstar's volatility, Ms. Allen runs a new regression over the time period from January 2, 2001 through April 17, 2001 – a different time period than I use – to create her own market model. Ms. Allen also includes the Defendant's Peer Index in her new

2

market model.  Ms. Allen's new market model, which is completely absent from the Dunbar Report, allows her to reach a new conclusion that one of the six corrective disclosure dates I discussed in my earlier Reports is not statistically significant.  In the Dunbar Report, Dr. Dunbar had not challenged my event study methodology, raised any concerns about my market model used in this matter, or disputed my findings about the statistical significance of Winstar's daily returns during the Class Period and, specifically, the six disclosure dates identified in the Jarrell Report.  Dr. Dunbar also did not create his own market model to be used in an event study on Winstar, although he had access to the data necessary to create a market model like Ms. Allen's because I note that he referenced the same four companies in the Defendant's Peer Index and their returns used by Ms. Allen in her new market model.

5. Similarly, in the Allen Report, Ms. Allen puts forth a new alternative damages theory based on her conclusions about my event study using her new market model discussed above, and abandons the damages theory advanced by Dr. Dunbar in the Dunbar Report, which was based on his novel revenue response coefficient model that I criticized in my Rebuttal Report.  I understand that Grant Thornton's counsel has suggested that Ms. Allen did not put forth a new damages theory, claiming only that she "changed a few inputs" in my damages model to arrive at her calculations.  It is apparent from the Allen Report, however, that much of her analysis is entirely new and different from Dr. Dunbar because her damages calculations are based on her own market model as discussed in paragraph 4 above.

6. Ms. Allen also raises new issues with the estimates of aggregate damages contained in the Jarrell Report.  Ms. Allen claims that I have failed to exclude purchases made by short sellers and that I have also failed to offset the losses suffered by the Class for the gains made when Class Members sold shares of Winstar at inflated prices.  These issues were not

raised by Dr. Dunbar and responding to Ms. Allen's claims will entail analysis of voluminous data files and substantial additional work.

7.   Ms. Allen, for the first time in the litigation, uses new analyses to bolster the analyses performed by Dr. Taylor in his Report regarding the status of competitive local exchange carriers ("CLECs") during the Class Period.  Dr. Dunbar did not address this issue at all, and merely cited to the Taylor Report.  In the Jarrell Rebuttal Report, I set forth in detail my criticisms of Dr. Taylor's opinions, as well as defended my position in my Deposition, and now I will have to respond to the different analyses employed and evidence produced by Ms. Allen.

8.   For the reasons identified above, it is my opinion that Ms. Allen has not merely adopted the conclusions reached by Dr. Dunbar in his Report and put them in her own words. Instead, Ms. Allen has reached entirely new conclusions based on entirely new analyses and theories that will require substantial effort and time to rebut in a relatively short time period.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Rochester, New York, this 7th day of January, 2013.

_Gregg A. Jarrell_