**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re WINSTAR COMMUNICATIONS
SECURITIES LITIGATION


This Document Relates to:  All Actions

Master File No. 01 Civ. 3014 (GBD)


**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENT, APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**
**AND CERTIFICATION OF THE SETTLEMENT CLASS**
**FOR SETTLEMENT PURPOSES ONLY**


Ralph M. Stone
James P. Bonner
Patrick L. Rocco
Susan M. Davies
STONE BONNER & ROCCO LLP
260 Madison Avenue, 17th Floor
New York, New York 10016

*Lead Counsel for Class Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.     Preliminary Statement ......................................................................................... 1

II.    Brief Description of the Litigation ....................................................................... 2

III.   Argument ............................................................................................................. 3

       A.   The Proposed Settlement Should Be Preliminarily Approved ...................... 3

            1.   The Proposed Settlement Is the Result of Well Grounded,
                 Good Faith, Arm's-Length Negotiations ............................................. 5

            2.   The Proposed Settlement Falls Within the Range of Reasonableness
                 and Merits Issuance of the Notice and Hearing on Final Approval .......... 5

       B.   The Court Should Approve The Form of the Notice and
            the Plan for Providing Notice to the Settlement Class .................................. 7

       C.   The Proposed Settlement Class Should Be Certified For
            Settlement Purposes Under Rules 23(a) and (b)(3) ....................................... 9

            1.   The Settlement Class Members Are Too Numerous to be Joined ............ 10

            2.   Common Questions of Law and Fact Exist .......................................... 11

            3.   Lead Plaintiffs' Are Typical of Those of the Settlement Class ............... 11

            4.   Lead Plaintiffs and Lead Counsel Will Fairly and
                 Adequately Protect the Interests of the Settlement Class ..................... 12

            5.   The Requirements of Rule 23(b)(3) Are Satisfied in this Action .......... 14

                 a.   Common Questions of Law and Fact Predominate ..................... 14

                 b.   A Class Action Is Superior to Other Available Methods for the
                      Fair and Efficient Adjudication of this Controversy .................. 15

       D.   Proposed Schedule of Events ..................................................................... 16

IV.    Conclusion ......................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................7, 14, 15

*In re American Int'l Group, Inc. Sec. Litig.*,
    689 F.3d 229, 240 (2d Cir. 2012)...........................................................................7, 15

*In re Arakis Energy Corp. Sec. Litig.*,
    1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999) .................................................................14

*Aramburu v. Healthcare Fin. Servs.*,
    2005 WL 990995 (E.D.N.Y. Apr. 14, 2005) ....................................................................9

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, L.L.C.,
    504 F.3d 229 (2d Cir. 2007).........................................................................................11

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)........................................................................................3, 10

*Cross v. 21st Century Holding Co.*,
    2004 WL 307306 (S.D.N.Y. Feb. 18, 2004)...................................................................10

*In re Currency Conversion Fee Antitrust Litig.*,
    2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ................................................................. 3-4

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79, 87 (S.D.N.Y. 2007) ...............................................................................4

*In re Interpublic Sec. Litig.*,
    2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ...................................................................3

*Leung v. Home Boy Rest. Inc.*,
    2009 WL 398861 (S.D.N.Y. Feb.18, 2009).....................................................................5

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)........................................................................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................................4, 6

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998)..........................................................................................3

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................4, 6, 9

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)..................................................................12, 10

*In re SCOR Holding (Switz.) AG Litig.*,
    537 F. Supp. 2d 556 (S.D.N.Y. 2008)....................................................10, 11, 14

*In re The Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)........................................................................12

*Toure v. Cent. Parking Sys. of New York*,
    2007 WL 2872455  (S.D.N.Y. Sept. 28, 2007)......................................................12

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) .............................................................. 11-12

*In re Vivendi Universal, S.A., Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .............................................................10, 11, 12

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................... 3-4

*In re Winstar Commc'ns Sec. Litig.*,
    2013 U.S. Dist. LEXIS 55800 (S.D.N.Y. April 17, 2013) ............................................ *passim*

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) .......................................................... 11-12, 13

**Statutes and Rules**

15 U.S.C. § 78a ....................................................................................2

15 U.S.C. § 78u-4 ...............................................................................1, 6, 8

Federal Rule of Civil Procedure 23 .............................................................. *passim*

Rule 10b-5.........................................................................................2

Lead Plaintiffs, Banca Intermobiliare di Investimenti e Gestioni SpA, DRYE Custom Pallets and Robert Ahearn (together, "Lead Plaintiffs"), respectfully submit this memorandum in support of this unopposed motion seeking preliminary approval, class certification and other relief (the "Motion") in connection with a settlement reached with Grant Thornton LLP ("GT" or "Defendant").[1]

## I.       Preliminary Statement

On the eve of trial, and after the completion of discovery and an extensive multi-year investigation, including the review of hundreds of thousands of pages of documents, the conduct and review of dozens of depositions and interviews of numerous additional witnesses, as well as after two arm's-length in-person mediation sessions, and extended one-on-one negotiations over several weeks, Lead Plaintiffs and GT have agreed to settle on a classwide basis all claims against GT in this Action in exchange for a cash payment of $10,000,000.00.  The terms of the Settlement are set forth in the Stipulation of Settlement and its accompanying exhibits.

Lead Plaintiffs' Motion seeks an order granting:

- Preliminary approval of the settlement of claims against Defendants in this class action, as set forth in the Stipulation of Settlement;


- Approval of the form, substance, and the requirements of the proposed notice and summary notice of settlement, appended as Exhibits 1 and 3 to the proposed Preliminary Approval Order, and the means and methods for disseminating notice, as comporting with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4 *et seq.*;

- Preliminary certification of a settlement class (the "Settlement Class") consisting of all Persons that, from March 10, 2000 to April 2, 2001, inclusive (the "Class Period"), purchased or otherwise acquired Winstar Common Stock or Winstar Bonds; and

---

[1] All capitalized terms not otherwise defined herein have the same meanings as those set forth in the Stipulation of Settlement dated July 12, 2013, (the "Stipulation of Settlement").  The Stipulation of Settlement (along with its exhibits) is annexed hereto as Exhibit 1.

- Scheduling a hearing at which final approval of the Settlement, plan of allocation and an award of attorneys' fees and reimbursement of expenses may be considered.

This proposed settlement represents an excellent result for the Settlement Class, particularly given the numerous and substantial risks the Lead Plaintiffs faced in this litigation. Although Lead Plaintiffs believe the claims asserted are meritorious, and GT believes their defenses are meritorious, the parties recognize the uncertainty and risk attendant to any litigation – especially a complex class action such as this – and the difficulties, substantial expense and risk of further prosecution of the litigation through trial, post-trial motions and appeals.  Based upon their respective considerations of these and other relevant factors, the Parties have settled the Action on the terms and conditions set forth in the Stipulation of  Settlement.

## II.      Brief Description of the Litigation

Given the proximity of the Settlement to trial, the Court is already well-versed in the lengthy procedural history of this case.

This case commenced in April 2001.  Following four years of litigation, Lead Plaintiffs filed a Joint Consolidated Amended Complaint on August 12, 2005 (the "Complaint"). The Complaint generally alleged, among other things, violations of Sections 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by making alleged misstatements and omissions during the Class Period in its Report of Independent Certified Public Accountants dated February 10, 2000, rendering opinions concerning the financial statements of Winstar and the sufficiency of GT's audit of Winstar's financial statements.  That report was made public in Winstar's 1999 Report on Form 10-K filed with the Securities Exchange Commission on or about March 10, 2000, which is the start of the Class Period.

This case was fully litigated through motions to dismiss, a motion to amend the complaint, a motion for summary judgment, and an appeal of a summary judgment dismissal, among numerous other motions and proceedings.

In the lengthy course of the litigation of this case, Lead Plaintiffs achieved two other partial settlements. First, in April 2004, Lead Plaintiffs achieved a $12 million settlement with Lucent Technologies, Inc. Second, in 2006, Lead Plaintiffs reached a $18.5 million settlement with certain former officers and directors of Winstar. Following those settlements, GT remained as the only defendant, and the next several years of litigation ensued, with the Settlement proposed here negotiated only four calendar days before trial was to commence.

Settlement on the eve of trial meant that counsel for both sides fully appreciated the risks associated with proceeding further. Both sides had the benefit of full discovery, including full expert discovery, as well as the Court's guidance on numerous motions in limine, and rulings on *Daubert* motions.

## III.    Argument

### A.        The Proposed Settlement Should Be Preliminarily Approved

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with public policy that strongly favors pretrial settlement of class action lawsuits. *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

The Court "must determine whether the terms of the proposed settlement warrant preliminary approval…. [by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL

3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *In re NASDAQ Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

As has been explained:

> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted. Once preliminary approval is bestowed, the second step of the process ensues. . . .

*NASDAQ*, 176 F.R.D. at 102 (citations omitted); *see also In re Initial Pub. Offering Sec. Litig*., 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Thus, on a preliminary inquiry, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ*, 176 F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (internal quotation marks omitted).

As shown below, the proposed Settlement here easily meets that test.

### 1.  The Proposed Settlement Is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations

A presumption of fairness applies to a proposed class settlement that is the result of arm's-length negotiations between counsel knowledgeable in complex class litigation.  *Wal-Mart Stores,* 396 F.3d at 116; *see also Leung v. Home Boy Rest. Inc*., 2009 WL 398861, *1 (S.D.N.Y. Feb.18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties . . .").  The Settlement is the product of just such rigorous arm's-length negotiations. The settling parties negotiated many times and on many occasions, both in-person and over the phone, before reaching the agreement to settle this case.

Moreover, the Settlement was reached only after completion of every step of a large and lengthy complex case prior to trial.  Thus, the Settlement was achieved with full familiarity with the issues in the case, more than sufficient to evaluate its merits and agree on a settlement figure that was fair, reasonable and adequate to the Settlement Class.

### 2.  The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval

The proposed settlement is an excellent result given the numerous and substantial risks Lead Plaintiffs would have faced at trial.  Lead Plaintiffs would have faced an extraordinary uphill battle presenting the details of nine complex and unusual transactions that are fourteen years old, that largely involve defunct companies, terribly faded memories, and many key witnesses who were beyond the subpoena power of the Court (and others who had passed away.)

GT would have raised a number of defenses including that there were no actionable misstatements and omissions and that Lead Plaintiffs would not be able to establish that it acted

with the requisite fraudulent intent. Even assuming Lead Plaintiffs could establish liability, GT would present credible testimony that any potential investment losses suffered by Lead Plaintiffs and other investors were caused by external, independent factors, and not caused by GT's alleged conduct. There was considerable risk that the jury would resolve the inevitable "battle of the experts" against Lead Plaintiffs.

As further indicia of its reasonableness, the Settlement exhibits no "obvious deficiencies" that would justify denying preliminary approval. *NASDAQ*, 176 F.R.D. at 102. The terms embodied in the Stipulation of Settlement are customary in nature. In particular, Lead Plaintiffs' recovery from the settlement fund will be determined according to precisely the same formula as the recoveries of other Settlement Class Members, with the exception of any compensatory payment to the Lead Plaintiffs approved by the Court, as contemplated by 15 U.S.C. § 78u-4(a)(4). *See NASDAQ*, 176 F.R.D. at 102 (settlement may be approved preliminarily where it "does not improperly grant preferential treatment to class representatives or segments of the class"); *Prudential*, 163 F.R.D. at 209 (preliminary approval is appropriate where "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives . . .") (citation omitted).

The fact that the proposed Settlement Class is broader than the recently certified class does not impact the preliminary approval analysis. At the time of the Settlement, the class certification was the subject of a separate Rule 23(f) petition to appeal, and class certification itself could be revisited during and after trial, as well as on appeal. The Settlement Class mirrors the classes that were previously approved for settlement purposes in this case, relating to the two prior partial settlements. In consultation with plaintiffs' expert, a Plan of Allocation has been

created to take account of the variances in the risks associated with the Winstar securities not previously certified by the Court's prior certification decision.

Nor should the Court's prior decision that the markets for some Winstar securities were not efficient serve as a barrier to conditional certification of an inclusive class for settlement purposes, despite the fact that this analysis precluded certification outside the settlement context. As the Second Circuit has explained:

> In the context of a settlement class, concerns about whether individual issues would create "intractable management problems" at trial drop out of the predominance analysis because "the proposal is that there be no trial."

*In re American Int'l Group, Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  As long as there were questions that qualify as a genuine controversy sufficient to yield a cohesive class, the broader class can be certified for settlement purposes.  *Id.*

### B.   The Court Should Approve The Form of the Notice and the Plan for Providing Notice to the Settlement Class

Lead Plaintiffs also request that the Court approve the form and content of the proposed Notice and Summary Notice (collectively, the "Notices").  (*See* Exhibits 1 and 3 to the proposed Preliminary Approval Order, attached to the Notice of Motion). Consistent with Rules 23(c)(2)(B) and 23(e)(1), Fed. R. Civ. P., the Notices apprise class members of the existence of the action, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released. The Notices also advise that a Settlement Class Member may enter an appearance through counsel if desired, notes that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadline for doing so), and further describes (i) the binding effect of a judgment

on Settlement Class Members under Rule 23(c)(3), (ii) how to object to the proposed Settlement and/or requested attorneys' fees, and (iii) how to make a claim.

The Notice satisfies the PSLRA's separate disclosure requirements by, *inter alia*: stating the amount of the Settlement on both an aggregate and average per share basis; stating the amount of attorney's fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7).  In addition, the Notice provides a brief statement explaining the reasons why the Settling Parties are proposing the Settlement. The Notice and Summary Notice also disclose the date, time and location of the final Settlement Hearing and the deadlines for submitting Proof of Claim forms and any objections to the Settlement, the Plan of Allocation, or to Lead Counsel's requested attorney's fees and expenses. These disclosures are thorough and should be approved.

Lead Plaintiffs also request that the Court approve the appointment of Gilardi & Co. LLC as Claims Administrator.  Gilardi & Co. LLC has extensive relevant experience (including having served as claims administrator for the two prior settlements in this case) and it is a nationally recognized notice and claims administration firm.  Gilardi & Co. LLC's staff consists of experienced certified public accountants, information technology specialists and various other professionals with substantial experience in notice and claims administration.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement, voluntary dismissal, or compromise]."  The proposed Notice plan, which is virtually identical to

the prior notice campaigns associated with the two prior settlements in this case, readily meets these standards and is typical of Notice plans in similar actions.

> **C.** **The Proposed Settlement Class Should Be Certified For Settlement Purposes Under Rules 23(a) and (b)(3)**

In granting preliminary approval of the Settlement, the Court should also preliminarily certify the Settlement Class under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. "The law in the Second Circuit favors the liberal construction of Rule 23 … and courts may exercise broad discretion when they determine whether to certify a class." *Aramburu v. Healthcare Fin. Servs.*, 2005 WL 990995, at *2 (E.D.N.Y. Apr. 14, 2005) (citation omitted).

Lead Plaintiff seeks preliminary certification of the following class:

> All persons and entities that during the period from March 10, 2000 through and including April 2, 2001 (the "Class Period") purchased or otherwise acquired the common stock, bonds, or other securities publicly issued by Winstar Communications, Inc.

The class embraces purchasers of the following Winstar securities: common stock; 14% senior discount notes due 2005; 14% convertible senior subordinated discount notes due 2005; 14 1/2 % senior deferred interest notes due 2005; 12 1/2 % guaranteed senior secured notes due 2004; 12 1/2% guaranteed senior secured notes due 2004; 15% senior subordinated deferred interest notes due 2007; 10% senior subordinated notes due 2008; 11% senior subordinated deferred interest notes due 2008; 12 1/2% senior exchange notes due 2008; 12 3/4% senior exchange notes due 2010; 14 3/4% senior discount exchange notes due 2010; euro denominated 12 3/4% senior

exchange notes due 2010; 12 3/4% senior exchange notes due 2010; and 14 3/4% senior discount

exchange notes due 2010; or any other securities publicly issued by Winstar.[2]

### 1.   The Settlement Class Members Are Too Numerous to Be Joined

As required for class certification by Rule 23(a)(1), the members of the proposed class

are so numerous that joinder of all its members would be "impracticable." Impracticable does not

mean impossible, and "[p]laintiffs are not obligated to prove the exact class size to satisfy

numerosity." *Cross v. 21st Century Holding Co.*, 2004 WL 307306, at *1 (S.D.N.Y. Feb. 18,

2004) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

Lead Plaintiffs may satisfy the numerosity requirement by "showing that a large number

of shares were outstanding and traded during the relevant period." *See In re Vivendi Universal,*

*S.A., Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (internal quotations and citation omitted).

Indeed, numerosity has been presumed at a level as low as forty (40) class members. *See In re*

*SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 570 (S.D.N.Y. 2008) (citing *Consol. Rail*

*Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

The Settlement Class satisfies the numerosity threshold here. *See In re Winstar*

*Commc'ns Sec. Litig.*, 2013 U.S. Dist. LEXIS 55800, at *12 (S.D.N.Y. April 17, 2013) (readily

finding the amounts of securities involved as supportive of numerosity). Therefore, Rule

---

[2] The following persons are excluded from the Class: (1) Any person or entity that excludes itself by filing a timely request for exclusion in accordance with the requirements set forth in the Notice; (2) William J. Rouhana, Nathan Kantor, and Richard J. Uhl, along with the members of each of their Immediate Family, legal representatives, heirs, successors, and assigns, and any entity in which these persons has or had a controlling interest; (3) Grant Thornton and the partners of Grant Thornton; and (4) the "Jefferson Plaintiffs" (i.e., Jefferson Insurance Company of New York; Allianz Life Insurance Company of New York; International Reinsurance Company S.A.; Life USA; AGF Amerique; AGF Hospitaliers; Fireman's Fund Insurance Company; The Northern Trust Company as trustee of the Fireman's Fund Insurance Company Master Retirement Trust (Fireman's Fund Retirement Plan) and as trustee of the Fireman's Fund Insurance Company Master Retirement Savings Trust (Allianz Asset Accumulation Plan and Allianz Employees' Primary Retirement Plan); Allianz Insurance Company; Allianz Life Insurance Company of North America; Allianz Asset Management North American Equity; US Allianz Diversified Annuity; US Allianz Growth Annuity; US Allianz Variable Insurance Products Trust; AZOA Growth Fund; AZOA Diversified Assets Fund; Allianz of America, Inc.; AGF Asset Management; Allianz Cornhill Insurance PLC; Cornhill Pension North American Equity Fund; Cornhill Life Insurance; Merchant Investors Assurance Company Limited; Allianz Asset Management North American Equity; and Cornhill Life North American Equity Fund).

23(a)(1) is satisfied.

### 2.    Common Questions of Law and Fact Exist

As Rule 23(a)(2) requires, the claims of the members of the proposed class involve numerous common questions of law and fact. To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (internal quotation and citation omitted). Class members' "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 2551.  The existence of just a single common legal or factual question is sufficient to satisfy Rule 23(a)(2). *Id.* at 2556. In securities fraud litigation, the "commonality requirement 'has been applied permissively.'" *Vivendi*, 242 F.R.D. at 84 (citation omitted).  This Court's prior class certification decision is likewise dispositive of this issue.  *See In re Winstar Commc'ns Sec. Litig.*, 2013 U.S. Dist. LEXIS 55800, at *12-14 (S.D.N.Y. April 17, 2013).

### 3.    Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

As Rule 23(a)(3) requires, "the claims . . . of the representative parties are typical of the claims . . . of the class."  Here, Lead Plaintiffs satisfy Rule 23(a)(3)'s typicality requirement because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *See SCOR*, 537 F. Supp. 2d at 571 (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007)).  "Typicality [ ] does not require that the situations of the named representatives and the class members be identical." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (quotation omitted). Rather,

so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (citation omitted), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 937; *see also Toure v. Cent. Parking Sys. of New York*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007).

Lead Plaintiffs' claims are typical of the claims of absent members of the proposed Settlement Class because they all arise from "the same set of events": Defendant's alleged material misstatements and omissions, which allegedly artificially inflated the value of Winstar securities.  Typicality has been established in similar securities fraud cases, and it is established here.  *See In re Winstar Commc'ns Sec. Litig.*, 2013 U.S. Dist. LEXIS 55800, at *14-20 (S.D.N.Y. April 17, 2013) ; *see also Vivendi*, 242 F.R.D. at 85.

### 4.    Lead Plaintiffs and Lead Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class

Rules 23(a)(4) and 23(g) are satisfied here because, as they require, (i) Lead Plaintiffs' interests are not antagonistic to those of other Settlement Class Members, and (ii) Lead Counsel are qualified, experienced, and eminently able to conduct this Action.  *See In re The Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  This Court's prior analysis has already found adequacy satisfied on class certification, which again holds true here.  *See In re Winstar Commc'ns Sec. Litig.*, 2013 U.S. Dist. LEXIS 55800, at *20 (S.D.N.Y. April 17, 2013)

Lead Plaintiffs purchased various Winstar securities on the open market during the Class Period and allegedly suffered losses as a result of the same course of conduct that allegedly injured other members of the Settlement Class. Therefore, Lead Plaintiffs' interest in demonstrating Defendants' liability and maximizing possible recovery are aligned with the

interests of the absent class members. *See, e.g., WorldCom*, 219 F.R.D. at 282 (finding that "named plaintiffs' interests are directly aligned with those of the absent class members; they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments"). Further, there is no evidence that Lead Plaintiff has interests antagonistic to the interests of other members of the Settlement Class.

As for the adequacy of Class Counsel, a court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). A court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, as the Court has previously concluded, Lead Counsel are experienced in litigating securities class actions and will fairly and adequately prosecute the claims of the Settlement Class. *In re Winstar Commc'ns Sec. Litig.*, 2013 U.S. Dist. LEXIS 55800, at *20 ("The resumes and course of conduct of [plaintiffs'] attorneys have adequately demonstrated their qualifications, experience, and competence. Plaintiffs' attorneys have diligently pursued this case over the past twelve years, and this Court is satisfied that they will adequately prosecute it at trial."

In view of these facts, Lead Plaintiffs should be appointed Class Representatives, and Lead Counsel should be appointed Class Counsel for the Settlement Class.

5.      **The Requirements of Rule 23(b)(3) Are Satisfied in this Action**

In addition to the four requirements of Rule 23(a), a certifiable class must also satisfy one of the three subparts of Rule 23(b).  Lead Plaintiff here seeks class certification under Rule 23(b)(3), which establishes two requirements, commonly referred to as "predominance" and "superiority," both of which are satisfied here.

a.      **Common Questions of Law and Fact Predominate**

Under Rule 23(b)(3), questions of law or fact common to the members of a class must "predominate" over any questions affecting individual members. The Second Circuit has stated that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citation omitted).  This test is "readily met in certain cases alleging … securities fraud," including this one. *See SCOR*, 537 F. Supp. 2d at 572 (quoting *Amchem*, 521 U.S. at 625).

In securities fraud class actions such as this "in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."  *In re Arakis Energy Corp. Sec. Litig.*, 1999 WL 1021819, at *10 (E.D.N.Y. Apr. 27, 1999).

Although in the context of litigation, this Court found that the market for certain Winstar securities was not sufficiently active to warrant a finding of efficiency and thus that the fraud-on-the-market presumption of reliance could be not used by such persons, warranting exclusion of them from the class in the case, that analysis is not applicable in the settlement context.  *See In re Winstar Commc'ns Sec. Litig.*, 2013 U.S. Dist. LEXIS 55800 at *24-38 (S.D.N.Y. April 17, 2013) (certifying class as to all stock purchasers and purchasers of three types of Winstar bonds,

but not others).

In this regard, the Second Circuit's decision in *In re American International Group, Inc. Sec. Litig.*, 689 F.3d 229 (2d Cir. 2012) ("AIG"), is on point. There, after the district court found that the market for certain securities was not efficient and thus that no class could be certified on behalf of those inefficient securities, a proposed class settlement was rejected. *Id*. at 237. In reviewing that decision, the Second Circuit distinguished between classes certified for litigation purposes and those certified for settlement purposes. The Circuit reversed and held that "[b]ecause settlement eliminates the need for trial, a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement." *Id*. at 232. Relying on the Supreme Court's analysis in the landmark *Amchem* decision, the Second Circuit stated:

> The Court squarely held that "[s]ettlement is relevant to a class certification." [*Amchem*] at 619, 117 S. Ct. 2231. According to the Court, a district court "[c]onfronted with a request for settlement-only class certification ... need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id*. at 620, 117 S. Ct. 2231 (citing Fed. R. Civ. P. 23(b)(3)(D)).

*AIG*, 689 F.3d at 238-39. The Second Circuit therefore vacated the district court's denial of settlement class certification. In light of *AIG*, the Court here should likewise not hesitate to certify the proposed Class for settlement purposes.

### b. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy

Rule 23(b)(3) further requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for consideration when determining whether a class action is superior: (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent

and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) whether it is desirable to concentrate litigation of claims in this forum; and (d) the manageability of a class action. These factors favor certification here.

Given the size and geographical dispersion of the proposed Settlement Class and the likelihood that many purchasers will have sustained comparatively small losses, the circumstances here are precisely those for which a class action is appropriate. It also is desirable to consolidate the litigation of claims here because common legal and factual issues predominate, and the alternative – the individual adjudication of Settlement Class Members' claims – would be extremely burdensome and risk inconsistency. *See In re Winstar Commc'ns Sec. Litig.*, 2013 U.S. Dist. LEXIS 55800 at *39 (S.D.N.Y. April 17, 2013) (finding superiority).

### D.      Proposed Schedule of Events

Lead Plaintiffs propose that a final Settlement Hearing be scheduled for a date approximately three months after preliminary approval is granted.  Upon entry of the Preliminary Approval Order, the notice process will promptly commence, allowing the final approval process to play out in accordance with a schedule set forth in the [Proposed] Preliminary Approval Order.

## IV.      Conclusion

For all of the foregoing reasons, Lead Plaintiffs respectfully request that this Court: (a) preliminarily approve the Settlement, including approving the form and substance of the proposed forms of notice and directing that notice be given to the members of the Settlement Class; (b) preliminarily certify the Settlement Class; (c) appoint Lead Plaintiffs and Lead Counsel as Class Representatives and Class Counsel, respectively; (d) schedule a hearing at

which approval of the Settlement, plan of allocation and an award of attorneys' fees and

reimbursement of litigation expenses to Lead Counsel may be considered; and (e) grant such

further relief as the Court deems just and proper.

Dated: July 12, 2013                           Respectfully submitted,

                                               STONE BONNER & ROCCO LLP


                                               By:_____/s/  Ralph M. Stone_____
                                                    Ralph M. Stone (rstone@lawssb.com)
                                                    James P. Bonner (jbonner@lawssb.com)
                                                    Patrick L. Rocco (procco@lawssb.com)
                                                    Susan M. Davies (sdavies@lawssb.com)

                                               260 Madison Avenue, 17th Fl.
                                               New York, NY 10016
                                               (212) 239-4340
                                               rstone@lawssb.com

                                               *Attorneys for Lead Plaintiffs and the Class*